IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VPI VENTURE GROUP, LLC, an Illinois limited liability company, ) ) ) Plaintiff/Counterdefendant, ) ) vs. ) ) ADVANTUS, CORP., a Florida corporation, ) ) ) Defendant/Counterplaintiff, ) ) and ) ) THE FRIEDMAN GROUP, LLC, an Illinois limited liability company, ) ) ) Third Party Defendant. ) | No. 05 C 5383<br><br>District Judge Manning<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

In this diversity action removed from state court, defendant/counterplaintiff Advantus, Corp. ("Advantus") has filed a counterclaim and third-party complaint against VPI Venture Group, LLC ("VPI") for breach of contract (Count I), against VPI for fraud (Count II), against The Friedman Group, LLC ("Friedman") for fraud (Count III), and against VPI and Friedman for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 (Count IV). Before the Court is VPI's and Friedman's motion to dismiss Count IV of Advantus's counterclaim under FED. R. CIV. P. 12(b)(6). Pursuant to the consent of all parties, this case has been reassigned to this Court for all purposes, including the entry of final judgment (doc. # 53). For the following reasons, the Court grants the motion.

I.

The following allegations from Advantus's counterclaim are taken as true for purposes of this motion to dismiss. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir. 1998). Advantus is a Florida corporation with its primary business address in Florida. VPI and Friedman are Illinois limited liability companies with their primary business addresses in Illinois. Irwin Friedman, who is a member of VPI and Friedman, also is an Illinois citizen.

On January 1, 2005, Advantus also entered into an Asset Purchase Agreement with VPI for the sale from VPI to Advantus of the assets and some liabilities relating to VPI's Vertiflex business. The Vertiflex business involves the marketing, sale, and distribution of office, coffee, document destruction, and home and educational furniture and products. Pursuant to the Asset Purchase Agreement, Advantus acquired, *inter alia*, Vertiflex's goodwill and going concern, relationships with customers, suppliers and certain catalog companies, customer orders, inventory, intellectual property, contractual rights, and other assets.

VPI initially had acquired the Vertiflex business in 2001. At that time, the Vertiflex business had debts to five of its large customers, and VPI proposed a plan to repay these debts, to which the customers agreed, by using a rebate program on future purchases. VPI operated the Vertiflex business for three years. When it offered to sell Vertiflex's assets to Advantus in November 2004, VPI represented that all of the rebate programs except one—the Boise Cascade program—would expire at the end of 2005, with this last program expiring at the end of 2006. Based on this representation, Advantus expected VPI's "old rebate" program to completely satisfy any outstanding indebtedness to Vertiflex customers and to expire at the end of 2005 and 2006.

2

According to Advantus, prior to its acquisition of the Vertiflex business in January 2005, VPI specifically prohibited Advantus from contacting any of the Vertiflex customers and failed to give Advantus copies of the rebate agreements. As a result, the Asset Purchase Agreement contained extensive representations and warranties by VPI regarding the Vertiflex business. Among the terms of the Asset Purchase Agreement was the promise that Advantus was entitled to rely upon these representations and warranties.

In its amended counterclaim and third-party complaint, Advantus alleges that VPI's representations and warranties were materially false and misleading. Among these representations and warranties was the claim that no money, or only a *de minimus* amount, would remain due or owing to Boise Cascade, a customer of Vertiflex at the end of 2006 (Countercl. ¶ 14). Specifically, based on the "old rebate" spreadsheet, VPI "further represented and warranted that the program for Boise Cascade would expire on 9/1/2005. VPI estimated that it would pay Boise Cascade $23,100 in 2005 and nothing in 2006, leaving an 'unpaid liability as of 12/31/06' of $900" (*Id.*). Advantus also alleges that VPI failed to disclose the existence of a second agreement with Boise Cascade that modified the "old rebate" program, extending the terms of the agreement and thus increasing the amount actually due to Boise Cascade (Countercl. ¶¶ 19-20).

Advantus also alleges that "[i]n addition to falsely representing that the 'old rebate' program with Boise Cascade would expire at the end of 2005, VPI misrepresented the amount due to Boise Cascade. The actual indebtedness of the Vertiflex business to Boise Cascade was far greater than VPI represented in § 2.5 of the Asset Purchase Agreement and the 'old rebate spreadsheet' attached thereto. After Advantus and VPI closed the Asset Purchase Agreement, Boise Cascade advised Advantus that, as of August 2005, there remained a balance due of $385,102, not $24,000 as VPI

3

had represented, and certainly not the $900 VPI represented would remain after the old rebate program expired" (Countercl. ¶ 21).

In Count IV, which VPI and Friedman seek to dismiss, Advantus asserts a claim under the ICFA, 815 ILCS 505/1. Advantus claims that VPI and Mr. Friedman's misrepresentations and omissions constitute deceptive acts and practices, which occurred during regular a course of conduct involving trade and commerce, and that VPI and Mr. Friedman intended for Advantus to rely upon these deceptive acts and practices (Am. Countercl. ¶¶ 59-61).

## II.

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief can be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, a court takes the complaint's well-pleaded allegations as true and draws reasonable inferences in favor of the plaintiff. *Id.* Dismissal generally is proper only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

We say "generally" because, while the Federal Rules of Civil Procedure in the main permit a plaintiff (or counterplaintiff) to engage in notice pleading, there are exceptions – and Advantus's ICFA claim falls within one of those exceptions. While FED.R.CIV.P. 8(a) allows notice pleading for most types of claims, FED.R.CIV.P. 9(b) requires that claims of fraud must be stated with particularity. The Seventh Circuit recently has reiterated the point that the relaxed pleading regime of Rule 8(a) must give way to the particularity requirement when the claim falls within the class identified by Rule 9(b). *Kolupa v. Roselle Park Dist.* ___ F.3d ___, 2006 WL 306955, *1 (7th Cir.

Feb. 10, 2006). Since Advantus's ICFA claim asserts fraud, Advantus must plead that claim with particularity.

### III.

To state a claim under the ICFA, one must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). *See also Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). Further, a party asserting a claim under the ICFA must be a consumer, as defined by the state statute, or must demonstrate that the alleged conduct relates to consumer protection issues. *3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 933 (N.D. Ill. 2000). The requirement of a consumer nexus avoids reading the ICFA so broadly that it would "supplant many common law breach of contract and fraud cases, something the Illinois legislature surely did not intend." *Williams Electronic Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (quoting *First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1039-40 (7th Cir. 1989)).

Under the ICFA, a "consumer" is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). A "person" can be a corporation or other business entity under the Act. *Id.* at 505/1(c). "[If] the plaintiff, whether a business entity or a person, is a consumer, it need only show a personal injury caused by the [defendant's] fraudulent or deceptive acts." *Skyline Int'l Dev. v. Citibank, F.S.B.*, 706 N.E.2d 942, 946 (Ill. App. 1998); *Birnberg v. Milk Street Residential Assoc., Ltd. P'ship.*, No. 02 C 0978, 02 C 3436, 2003 U.S. Dist.

LEXIS 806, at * 51-52 (N.D. Ill. Jan. 21, 2003) ("when the plaintiff itself is a consumer, the plaintiff does not need to show that the transaction implicates consumer protection concerns; [the consumer protection] factor only comes into play when the purchaser is a business").

On the other hand, when a dispute under the ICFA involves two businesses that are not consumers of each other's products, the claim must meet the consumer nexus test by showing that the alleged conduct "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996); *see also Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *Oliveira*, 776 N.E.2d at 160. This test may be satisfied if the alleged fraud implicates public health, safety, or welfare issues. *Credit Ins. Consultants v. Gerling Global Reinsurance Corp.*, 210 F. Supp.2d 980, 985-86 (N.D. Ill. 2002).

### A.

Nowhere in Count IV of its counterclaim does Advantus allege consumer status. In its opposition memorandum, however, Advantus asserts that it is a "consumer" under the statute (Advantus Resp. 3-5). Even considering the assertions in Advantus's brief concerning consumer status that are not in the counterclaim, as we are permitted to do, *Hentosh v. Herman M. Finch University*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999), these assertions fail to sufficiently allege that Advantus was a "consumer" in the transaction at issue.

Advantus has sufficiently alleged that it is a "person" under the ICFA, and that it engaged in a purchase of merchandise: as part of the deal, Advantus purchased Vertiflex's intangible/intellectual property, specifically "the right to use the Vertiflex name, trademark and good will as well as intellectual property, trade secrets and confidential information" (Advantus Resp. 4).

Intellectual property qualifies as property – or merchandise – under the ICFA. *See Pyramid Publ'g & Prods. v. Baker & Taylor*, 1998 U.S. Dist. LEXIS 14193, *13-14 (N.D. Ill. 1998). However, simply because one company purchases assets from another does not automatically render it a consumer under the ICFA; instead, the transaction must involve "the purchase of merchandise *not for resale*." 815 ILCS 505/1(e) (emphasis added).

Advantus has not alleged that it purchased the intangible/intellectual property as an end product in itself. Instead, the counterclaim alleges that Advantus purchased the Vertiflex business and the intangible/intellectual property, such as good will, necessary to continue operating that business (Countercl. ¶ 4). In our view, this falls within the Seventh Circuit's holding that if a business purchaser's "only use of the purchased product is as an input into the making of a product that he sells," then that purchaser does not qualify as a consumer under ICFA. *Garrity*, 366 F.3d at 579. Thus, we conclude that Advantus has failed to sufficiently allege that it is a consumer under the ICFA.[1]

### B.

Because Advantus has not sufficiently alleged consumer status, it must plead the consumer nexus necessary to bring a claim under the ICFA by alleging that the transaction "involves trade practices addressed to the market generally or otherwise implicated consumer protection concerns." *Athey Prods. Corp.*, 89 F.3d at 436-37. Advantus, however, argues that because it is a consumer, it need not make this allegation (Advantus Resp. at 2), and thus has not even attempted to do so.

---

[1] We have considered Advantus's reliance on *Pyramid*, but find it unpersuasive. In that case, the counterclaimant asserted an ICFA claim in connection with a transaction in which it obtained from Pyramid an exclusive use license to certain songs, for the purpose of manufacturing and distributing them. In denying a motion to dismiss, the court held that the counterclaimant sufficiently alleged consumer status under the ICFA. *Pyramid*, 1998 U.S. Dist. LEXIS 14193, at *13-14. We believe that *Pyramid* does not fit comfortably with the Seventh Circuit's more recent decision in *Garrity*, and thus decline to follow it.

7

In any event, we doubt that Advantus could make such an allegation, as the alleged misrepresentations were directed to Advantus in a private transaction that would appear to lack any broader bearing on the market. *See Am. Broad. Co. v. Maljack Prods.*, 34 F. Supp.2d 665, 681 (N.D. Ill. 1998) (holding that defendant's letters were not directed to the market generally and had no direct effect on consumers and therefore did not provide the required consumer nexus). Since we have found that Advantus is not a consumer, its failure to allege any other basis for a consumer nexus is fatal to the ICFA claim.

## CONCLUSION

For the foregoing reasons, the Court grants VPI and Friedman's motion to dismiss Count IV (doc. # 12).

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: March 7, 2006

8